IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TAJANA SHERREL HARRELL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:09-CV-1123-TFM |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits

under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and

supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et*

*seq*., Tajana Harrell ("Harrell") received a hearing before an administrative law judge

("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected

review the decision became the final decision of the Commissioner of Social Security

("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court

AFFIRMS THE COMMISSIONER'S decision.

### STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when

the person is unable to

Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[2] This subpart is also referred to as "the Listing of Impairments."

[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

Step 5, the burden shifts to the Commissioner, who must then show there are a significant

number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's

Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still

able to do despite his impairments and is based on all relevant medical and other

evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at

1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and

work experience to determine if there are jobs available in the national economy the

claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical

Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE).  *Id*. at

1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

or light work, inability to speak English, educational deficiencies, and lack of job

experience.  Each factor can independently limit the number of jobs realistically available

to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a

statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  "The Social

Security Act mandates that 'findings of the Secretary as to any fact, if supported by

substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995), quoting 42 U.S.C. §405(g).  Thus, this Court must find the Commissioner's

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.   ADMINISTRATIVE FINDINGS

Harrell, age 38 at the time of the hearing, completed high school in regular classes. Her past relevant work includes employment as a cloth examiner, teacher's aide, and

lunchroom counter attendant.[5]   Harrell has not engaged in substantial gainful work activity since the amended application date of July 14, 2005.  Harrell's application claims she is unable to work because of hypertension, acid reflux, respiratory system disorders, and sarcoidosis.[6]

Harrell said that she experiences significant pain from sarcoidosis about three times a week.  Harrell rates the pain at eight on a scale of one to ten, with ten being highest, and said it lasts about fifteen to twenty minutes.  Harrell claims she has pain at other times to a lesser degree.  The pain is brought on by standing or walking for a long period of time.[7]   She has problems lifting heavy objects, but can use her hands to manipulate smaller objects.  She has lower back pain and spends most of her day in a recliner watching television, or sitting on her porch.  Harrell washes dishes, irons from a seated position, washes clothes, shops, and makes beds.  She walks in her backyard about four days a week, goes to Bible Study and church.  Harrell sits in the back of the church because she has more freedom to move around and find a comfortable position. Harrell's back pain travels through her legs, with greater pain in her right leg.  Harrell rates her back and leg pain at level eight.  This pain occurs about four times a week and lasts for about thirty minutes.  She received patches and shots for this pain from The Pain Clinic but can no longer afford that treatment.  She takes Goody Powder and Advil for pain. She said she could not perform a job that required her to lean forward in a seated position because it triggers back pain.  Harrell underwent three surgeries on her lungs.

---

[5] R. at 393.
[6] R. at 355.
[7] R. at 365-66.

The ALJ's review of Harrell's medical records noted treatment by Dr. Vincent Law between January, 2006 and January, 2007.  Dr. Law diagnosed inflammatory lung disease and opined that Harrell could sit for one hour, stand for three hours, and walk for three hours.  He found her unable to climb, twist, bend, stoop, or reach above shoulder level; unable to lift or carry ten pounds; and unable to use either hand for repetitive fine manipulation, or to push/pull arm controls.  Dr. Law recommended that Harrell not return to work.[8]

Harrell was treated by Dr. Runas Powers, rheumatologist, between October, 2005 and May, 2007.  Dr. Powers performed a physical capacities evaluation of Harrell in November, 2006.  He found Harrell can sit without limitation, stand for thirty minutes at a time, and up to ninety minutes in an eight hour day; walk for ten minutes at a time, and up to thirty minutes a day; occasionally lift or carry; occasionally use her hands for repetitive action such as simple grasping, pushing/pulling arm controls, and for fine manipulation; and occasionally use feet for repetitive movement such pushing/pulling leg controls.[9]  Dr. Powers found Harrell can never climb or balance; occasionally stoop, kneel, crouch, crawl, and reach overhead; occasionally work around unprotected heights ; never work around moving machinery, marked changes in temperature and humidity; and never be exposed to dust/fumes/gases.[10]  In November, 2007, Dr. Powers wrote a letter

---

[8] R. at 24.
[9] R. at 24-25.
[10] R. at 25.

indicating that Harrell has limited stamina due to her extreme shortness of breath, is limited by fatigue and pain, and could not work over the next twelve months.[11]

Dr. Jack Evans, a medical expert, testified at Harrell's hearing.  Dr. Evans listed Harrell's medical conditions as sarcoidosis, hypertension, thoracic disc, gastroesophageal reflux disease (GERD), and obesity.  Dr. Evans opined that Harrell's conditions, either individually or in combination, do not meet Listing-level severity for disability.[12]  The ALJ presented Dr. Evans with a list of possible functional limitations.  Dr. Evans responded that Harrell could likely sit for one hour at a time and up to six hours a day; stand for thirty minutes at a time and up to two hours a day; walk for ten minutes at a time and up to one hour a day; occasionally lift and carry ten pounds; and frequently lift and carry five pounds.[13]  He opined that Harrell can frequently use her hands for simple grasping; occasionally push and pull arm controls; perform fine manipulation frequently; occasionally use her feet for pushing and pulling of leg controls; occasionally crouch, stoop, kneel; never crawl, climb, balance, work around hazards or dusts/fumes/gases; and frequently reach overhead.[14]  The ALJ asked Dr. Evans to state the approximate date Harrell's conditions reached the level of severity reflected by the record, and the answer was July, 2005.[15]

The ALJ questioned Dr. Evans about his opinion regarding Harrell's ability to perform fine manipulation because it differed from that by treating rheumatologist, Dr.

---

[11] R. at 25.
[12] R. at 384-85.
[13] R. at 25-26, 385-86.
[14] R. at 26, 386-87.
[15] R. at 387.

Powers.  Dr. Evans responded that he drew his opinion from the entire record and Dr. Powers' treatment notes on Harrell.  He did not find anything in the record "that indicated any inability to use the fingers or hands," and implied from Dr. Powers' notes that Harrell's hand and arm function were satisfactory.[16]

A vocational expert (VE) testified during Harrell's hearing.  The ALJ presented the VE with Harrell's education/age/experience, and the physical abilities from Dr. Evan's testimony.  The VE said that such a person could not return to Harrell's past work.[17]  The VE did identify occupations that such a person could perform, and listed call-out operator, reception clerk, and surveillance system monitor.[18]  The VE's answer did not change after the ALJ modified the hypothetical to include Harrell's pain and occasional use of hands for simple grasping and fine manipulation.[19]

The ALJ found Harrell is severely impaired by sarcoidosis, hypertention, herniated nucleus pulposus in the thoracic spine, gastroesophageal reflux disease, lumbar radiculopathy, and obesity.[20]  The ALJ found Harrell's combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[21]

The ALJ found Harrell's RFC encompasses sedentary work with non-exertional limitations.  The ALJ found Harrell can frequently use either or both hands for repetitive action such as simple grasping and fine manipulation; occasionally use either or both

---

[16] R. at 388.
[17] R. at 395-96.
[18] R. at 396-97.
[19] R. at 397.
[20] R. at 21.
[21] R. at 27.

hands for repetitive action such as pushing and pulling arm controls; occasionally use either or both feet for pushing or pulling leg controls; occasionally stoop, crouch, and kneel; never crawl, climb, or balance; and occasionally reach overhead.   The RFC prohibits Harrell from working around unprotected heights; dust/fumes/gases; and exposure to marked changes in temperature and humidity.   The fact that Harrell experiences moderately severe pain lasting up to thirty minutes at a time, three to four times a week was also included in the RFC.[22]

The ALJ found Harrell's testimony of disabling pain and functional restrictions disproportionate to the objective medical evidence.  He found that the record, as a whole, does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged by Harrell.  The ALJ acknowledged that Harrell had presented evidence of impairments that could reasonably be expected to produce pain and discomfort, but noted that such evidence did not establish disability in her case.  The ALJ found Harrell's daily activities are not as limited as one would expect in light of her testimony of disabling symptoms and limitations.  The ALJ gave great weight to the testimony and opinion from Dr. Evans, finding that it was strongly supported by the evidence from treating sources.  The ALJ credited Dr. Powers' opinion to the extent that his RFC assessment matched the requirements for sedentary work, and disregarded Dr. Powers' opinion to the extent that he pronounced Harrell disabled.[23]  The ALJ explained that he disregarded Dr. Powers' ultimate conclusion that Harrell cannot work because that finding is reserved for the Commissioner.  The ALJ

_____

[22] R. at 27.
[23] R. at 29.

9

gave little weight to Dr. Law's opinion that Harrell cannot use either hand for repetitive fine manipulation or pushing/pulling arm controls because the opinion was not accompanied by any evidence.[24]   Finally, the ALJ referenced VE testimony which indicated Harrell cannot return to her past work, and cannot perform the full range of sedentary work.[25]   The ALJ cited the VE's testimony identifying occupations that suit Harrell's RFC.  The finding that Harrell can perform the sedentary work identified by the VE led the ALJ to conclude she is not entitled to disability benefits under the Act.[26]

### III.  ISSUE

Harrell raises a single issue for judicial review:

1.  Whether the ALJ's decision denying befits is supported by substantial evidence.[27]

### IV.  DISCUSSION

**The ALJ decision is supported by substantial evidence.**

Harrell puts forth two main arguments to reverse the ALJ.  Harrell claims the ALJ did not correctly consider the opinions of her treating physicians (including the diagnoses of pain and fatigue), and failed to properly develop the record by seeking additional evidence from Dr. Powers.  The Commissioner responds that the ALJ applied current law in his treatment of the physicians' opinions, and had no obligation to seek additional evidence because the record was sufficient.

---

[24] R. at 30.

[25] R. at 30-31.

[26] R. at 31.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[27] The Commissioner correctly notes that Harrell's brief does not conform to the instructions set forth by this Court. *See* Doc. 4.

Harrell argues the ALJ failed to properly evaluate the opinions of Dr. Runas

Powers, her treating rheumatologist, and Dr. Vincent Law.  The focal point of her

argument is the ALJ's decision to adopt the medical opinion of Dr. Jack Evans, the

medical expert who testified at the hearing.  Dr. Evans' opinion differed from Dr. Law's,

which restricted Harrell from using either hand for repetitive fine manipulation, or to

push/pull arm controls, and from Dr. Powers', which limited Harrell to occasional use of

her hands for repetitive action such as simple grasping, pushing/pulling arm controls, and

fine manipulation.  The ALJ specifically questioned Dr. Evans about why his opinion

differed from Dr. Powers'.  Dr. Evans said his opinion was based on the entire record,

which did not indicate "any inability to use the fingers or hands," and on Dr. Powers'

treatment notes, which did not indicate any deterioration in hand or arm function.[28]  The

ALJ decision found Dr. Evans' opinion was supported by the record and assigned great

weight to the opinion.  Dr. Powers' opinion was "essentially commensurate" with

sedentary work, and given substantial weight in part.  Dr. Law's opinion was given little

weight because it was not supported by any evidence.

A treating physician's opinion "must be given substantial or considerable weight

unless 'good cause' is shown to the contrary.'"  *Phillips v. Barnhart,* 357 F.3d 1232,

1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"Good cause" is present where the "(1) treating physician's opinion was not bolstered by

the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at

---

[28]R. at 388.

1241, citing *Lewis*.  When assessing medical evidence, an "ALJ [is] required to state with

particularity the weight [given] the different medical opinions and the reasons therefor."

*Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam).  Social security

regulations require an ALJ evaluating medical opinion evidence to consider a variety of

factors, including the examining and treatment relationships, the specialization of the

person giving the opinion, and how well the record supports the opinion in question.  *See*

20 C.F.R. § 404.1527(d)(1)-(6).  "The weighing of evidence is a function of the

factfinder, not of the district court. The question is not whether substantial evidence

supports a finding made by the district court but whether substantial evidence supports a

finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

The ALJ chose to credit Dr. Evans' opinion, rather than those by Harrell's treating

physicians, which is consistent with the *Phillips* test.  The arguments made for Dr. Law's

opinion are easily countered by the ALJ's finding that the opinion was not accompanied

by record evidence.  Dr. Powers' opinion that Harrell could perform sedentary work was

accepted but for its intrusion into an area reserved for the Commissioner, *i.e.*, the ability

to determine disability.  *See* 20 C.F.R. § 404.929.  Dr. Evans relied upon Dr. Powers'

treatment notes to explain to the ALJ that Harrell's hand/arm function was sufficient for

frequent grasping/manipulation and occasional pushing/pulling of arm controls.[29]  Thus,

Dr. Power's finding that occasional grasping/fingering was inconsistent with his

---

[29] R. at 386, 388.

treatment notes.  Indeed, Harrell concedes that Dr. Powers' RFC suggested an ability to perform sedentary work.[30]

As an aside, Harrell contends the ALJ did not consider the pain and weakness she experiences, as documented by Dr. Powers' medical opinion.  The Commissioner correctly points out that Dr. Powers' sedentary RFC implicitly incorporated the weakness experienced by Harrell.[31]  The ALJ incorporated Harrell's testimony about the frequency and intensity of her pain into a modified hypothetical for the VE.  The VE responded that the level and frequency of pain was accommodated by the occupations previously listed as within Harrell's abilities.  Further, the VE was also questioned as to whether the "occasional" grasping/fingering abilities set forth by Dr. Powers were consistent with the occupations listed.  The VE responded affirmatively to this question.[32]  Thus, the record shows that pain and fatigue were considered in the final RFC.

Although the Court is satisfied that the RFC determination is supported by substantial evidence, and the treating physicians' opinions were properly considered, a subsidiary issue remains. Harrell argues the ALJ should have sought additional evidence from Dr. Powers.  Essentially, Harrell suggests that the ALJ did not develop a full and fair record.  The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled.  20 C.F.R. §§ 404.1512(a), 416.912(a); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  Here, there is no claim that the record lacked any documents relevant to Harrell's course of treatment by Dr. Powers.  If Harrell wished to

---

[30] Pl. Br. at 8.
[31] Def. Br. at 10.
[32] R. at 397.

submit additional records from Dr. Powers, she could have done so because the ALJ held the record open for additional records.[33]

The record contains substantial evidence for the ALJ's RFC determination. The opinions by treating physicians were treated in accordance with *Phillips*, and the record included all documents relevant to Harrell's course of treatment by Dr. Powers. Accordingly, the Court finds no error as to this issue.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 30th day of December, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[33] R. at 401-02.